# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7527 | **DATE** | 8/30/2002 |
| **CASE TITLE** | Harris, etal v. City of West Chicago, etal. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss (#8-1)(#9-1) and to Strike (#8-2)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, Defendants' Motions to Dismiss (#8-1)(#9-1) and to Strike (#8-2) are **GRANTED**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ☐ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 0 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Allen Harris, Nancy Harris,<br>Jason Harris, and James Hofmann,<br>a minor, by Nancy Harris, his<br>mother and next friend<br>    Plaintiffs,<br><br>v.<br><br>City of West Chicago, Illinois,<br>West Chicago Community High<br>School, District 94, Richard<br>Theodore, Gerald S. Mourning,<br>Doreen Baker, John Highland, and<br>Forty Unidentified Patrol Officers<br>of West Chicago Police Department<br>    Defendants. | Case No. 01 C 7527<br><br>JUDGE WILLIAM J. HIBBLER |



DOCKETED
SEP 0 3 2002

## MEMORANDUM OPINION AND ORDER

Allen Harris ("Allen"), Nancy Harris ("Nancy"), Jason Harris ("Jason"), and James Hofmann ("Jimmy") (collectively "Plaintiffs") filed a claim against the City of West Chicago ("City"), Gerald S. Mourning ("Mourning"), Doreen Baker ("Baker"), and Forty Unidentified Patrol Officers of the West Chicago Police Department (collectively "City Defendants"), and the West Chicago Community High School, District 94 ("WCCHS") and John Highland ("Highland") (collectively "School Defendants"), alleging three violations under 42 U.S.C. § 1983

("Section 1983") and/or state law: (1) unlawful harassment; (2) invasion of privacy; and (3) libel and slander.[i]

The Court now has before it Motions to Dismiss and Strike filed by both City and School Defendants. Both parties request that the Court dismiss all three counts against them and strike Plaintiffs' prayer for punitive damages. For the reasons set forth below, the Motions to Dismiss and Strike are **GRANTED**.

The Court notes Plaintiffs filed a Motion to Stay Proceedings pending a ruling by the United States Supreme Court in *Gonzaga v. Doe*, 122 S. Ct. 2268 (2002). As that case was decided on June 20, 2002, it will be addressed by the Court and incorporated into the analysis set forth below. Therefore, Plaintiffs' motion is moot and does not need to be ruled on by the Court.

---

[i] Plaintiffs do not indicate whether they are suing the individual defendants in their individual or official capacity. The old rule assumed a failure to indicate capacity meant a plaintiff was suing an individual in his official capacity. *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985). This rule has given way to a new interpretation whereby a court reviews the complaint and determines whether the claims brought, including the relief sought, indicate the capacity in which they are seeking to sue. *Hill v. Shelander*, 924 F.2d 1370, 1373-74 (7th Cir. 1991). In this case, Plaintiffs seek punitive damages, which would normally point to an individual capacity suit, *see Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998), but Plaintiffs specifically argue City and WCCHS should be held liable for punitive damages anyway. Plaintiffs also argue policy and custom, which typically indicates an official capacity suit. *Hill*, 924 F.2d at 1373; *see also Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). Therefore, the Court finds for purposes of this ruling, the claims against the individuals are in their official capacity. It is important to note, though, Section 1983 individual capacity suits must allege the individual acted under color of state law and deprived Plaintiffs of a constitutionally protected right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, Plaintiffs' claims against the individual defendants in their individual capacity would still fail, as Plaintiffs have failed to adequately allege they were deprived of a constitutional right.

## BACKGROUND

Plaintiffs are residents of West Chicago, Illinois, and both children, Jason and Jimmy, are or have been students at WCCHS. At all relevant times, Defendant Baker was the administrative assistant to Defendant Mourning, the West Chicago Chief of Police; Defendant Theodore was a police officer serving as a school resource officer at WCCHS; and Defendant Highland was the Assistant Principal at WCCHS.

During a period prior to October 2, 2000, Jason maintained a social relationship with Defendant Baker's daughter, Jessica Day ("Day"). Then, at some point prior to October 2, 2002, Jason discontinued his relationship with Day. Plaintiffs allege after Jason ended his relationship with Day, they became the subjects of unlawful harassment by City Defendants. This alleged harassment included "unnecessary and unwarranted police interventions and arrests, unnecessary and unwarranted police drive bys past the residence occupied by the plaintiffs, verbal and physical harassment by the Officers against Jason and Jimmy and other overt acts of harassment." (Pls.' Compl. ¶ 17). These actions were allegedly prompted and taken at the request of Defendant Baker.

Plaintiffs allege they also became the subjects of unlawful harassment by School Defendants. The alleged harassment consisted of a "systematic course of harassment against Jason and Jimmy" that has

- 3 -

deprived Jason of the opportunity to complete high school at WCCHS and has compromised Jimmy's opportunity to do the same. (Pls.' Compl. ¶ 19). Plaintiffs also allege "unequal and discriminatory conduct" by WCCHS against both Jason and Jimmy. (Pls.' Compl. ¶ 19).

Plaintiffs' second count alleges the severance of the relationship between Jason and Day also prompted an invasion of their privacy by certain agents of WCCHS, including but not limited to, Defendants Highland and Theodore. They claim certain of the disclosures violated the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(a)(2).

Plaintiffs' third count alleges libel and slander against Jason by certain agents of WCCHS, including but not limited to, Defendants Highland and Theodore. Additionally, Plaintiffs allege several of the statements violated FERPA.

Plaintiffs' complaint sets forth no more facts or allegations than those outlined in the preceding paragraphs. The Motions to Dismiss and Strike filed by each of City and School Defendants claim Plaintiffs have not sufficiently pleaded their case. Plaintiffs' response recognizes their complaint is likely deficient and sets forth additional facts. However, a brief in opposition to a motion to dismiss cannot amend the complaint. *Perkins v. Silverstein*, 939 F.2d

463, 470 n.6 (7ᵗʰ Cir. 1991). Therefore, Plaintiffs request the opportunity to replead, i.e. file an amended complaint.

A court may use its discretion when ruling on a request to replead. *DeSalle v. Wright*, 969 F.2d 273, 278 (7th Cir. 1992). A court does not abuse its discretion if a repleading would be futile. *Id.* In regards to Counts II and III, as well as Plaintiffs' prayer for punitive damages, the Court finds a repleading by Plaintiffs would be futile; Plaintiffs would still be unable to survive a motion to dismiss. *Garcia v. City of Chicago, Illinois,* 24 F.3d 966, 970 (7ᵗʰ Cir. 1994) (citations omitted). Therefore, the Court denies Plaintiffs' request and will make its finding based on those facts and allegations already before the Court.

Regarding Count I, even if the Court were to recognize Plaintiffs' responsive pleading as amending their complaint and consider those additional facts and allegations, Plaintiffs have still not sufficiently pleaded claims for which relief could be granted. Therefore, a repleading is unnecessary.

## MOTIONS TO DISMISS

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the complaint rather than the merits of the case. The Court must construe all allegations in the complaint in the light most favorable to Plaintiffs, taking all well-pleaded facts and allegations within

the complaint as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Defendants must meet a high standard to prove the complaint should be dismissed for the failure to state a claim upon which relief could be granted. A plaintiff's complaint should only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court must liberally construe the present pleadings when determining whether they meet the notice pleading provisions of the federal rules. *Leatherman v. Tarrant County*, 507 U.S. 163, 168 (1993). However, the Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago*, 777 F. Supp. 1437, 1440 (N.D. Ill. 1991).

## Section 1983 Claims Generally

To establish a Section 1983 claim against a local public entity, Plaintiffs must demonstrate: (1) Defendants deprived Plaintiffs of a constitutionally protected right; and (2) Defendants' policy, custom or usage caused the deprivation. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694-95 (1978); *Leahy v. Bd. of Trustees of Community College Dist. No. 508*, 912 F.2d 917, 922 (7th Cir. 1990).

Plaintiffs may allege a "policy" in one of three ways: (1) by identifying an express policy that caused the alleged constitutional

violation; (2) by alleging the existence of a practice so widespread and permanent that it constitutes a custom or usage; or (3) by alleging that the constitutional injury was caused by a person with final policymaking authority. *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994). If Plaintiffs allege a claim under the third approach, such claim can be based on a single decision so long as that decision was made by a final policymaker. *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Whether or not a particular employee has final policymaking authority is a matter of state law. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989) (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)).

### Count I — Unlawful Harassment

Plaintiffs' first count alleges unlawful harassment by both City and School Defendants under Section 1983 and in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments.

The Court will first address Plaintiffs' claim against City Defendants. Plaintiffs allege Defendants harassed Plaintiffs by subjecting them to unwarranted police interventions, arrests, drive-bys past their residence, verbal and physical harassment and other overt acts of harassment. For purposes of ruling on City Defendants' Motion to Dismiss, the Court will consider the more specific allegations that Plaintiffs set forth in their response. There,

Plaintiffs allege that the harassing incidents included: (1) a "bumping" of Jason by a City Police Officer with the accompanied threat "watch it - we're going to get you and your family"; (2) drive-bys past Plaintiffs' residence, sometimes hourly, daily or weekly, and sometimes including a shining of a spotlight into their windows; and (3) a pattern of multiple, harassing prosecutions of Jason and Jimmy. (Pls.' Resp. pp. 3-4).

In order for Plaintiffs to satisfy the first element of a Section 1983 claim, they must demonstrate that they were deprived of a constitutionally protected right.

Generally, "police harassment, without more, cannot form a basis for a § 1983 cause of action." *Arnold v. Truemper*, 833 F. Supp. 678, 682 (N.D. Ill. 1993). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) (citations omitted). The inconvenience, embarrassment or aggravation that could result from police harassment does not rise to a constitutional violation. *Arnold*, 833 F. Supp. at 683. Plaintiffs' specific allegations, including the frequent drive-bys, with or without the accompanying spotlight, and

the threat "watch it - we're going to get you and your family," simply do not rise to the level of a constitutional violation.  *Goldberg v. Weil*, 707 F. Supp. 357, 361 (N.D. Ill. 1989) (dismissing a harassment claim based on allegations the police banged on the plaintiff's front and back doors, jumped over her locked fence into her backyard, shouted at her and threatened her with arrest).

Regarding the alleged "bump", while "police officers do not have the right to shove, push or otherwise assault innocent citizens without any provocation whatsoever", *Jacobs v. City of Chicago,* 215 F.3d 758, 774 (7th Cir. 2000) (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)), "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force."  *Graham*, 490 U.S. at 397.  In this case, Plaintiffs do not allege any injury or damage resulted from the "bump", physical or otherwise. *Lanigan,* 110 F.3d 467, 470 n.3; *McNair v. Coffey*, 279 F.3d 463, 469 (7th Cir. 2002) (while a lack of injury does not definitively point to a finding of no excessive force, it can be given weight when considering the totality of the circumstances).  The complaint clearly

alleges City's officers intended to harass Plaintiffs, including Jason, as a result of the end of the relationship between Jason and Day. As discussed above, a claim based on verbal harassment and drive-bys is not cognizable. The mere fact this "bump" was physical and not verbal does not elevate the interaction to excessive force. *See Graham,* 490 U.S. at 386 (finding excessive force based on the plaintiff's broken foot, cuts on wrist, bruised forehead, and injured shoulder); *Miller v. Smith,* 220 F.3d 491 (7th Cir. 2000) (finding excessive force after officer kicked plaintiff in the back, stepped on his face, punched him, and yanked him around by the hair); *McDonald v. Haskins,* 966 F.2d 292 (7th Cir. 1992) (finding excessive force after officer held gun to head of nine-year-old boy and threatened to pull trigger during course of search of boy's residence). Plaintiffs are unable to take their claim of unlawful harassment from untenable to maintainable.

For the present motion to dismiss, the Court assumes Plaintiffs' allegations are true; accordingly, City's officers acted unprofessionally and may have violated state and/or city police codes. But such alleged harassment cannot be maintained as a constitutional violation for purposes of establishing a claim under Section 1983. *Slagel,* 811 F. Supp. at 382.

The Court will now proceed to Plaintiffs' more serious allegations that Jason and Jimmy were subjected to unwarranted arrests and harassing prosecutions. (Pls.' Compl. ¶ 17; Pls.' Resp. p. 4). Plaintiffs must show these arrests and/or prosecutions deprived them of some constitutional right. Here, it appears Plaintiffs allege a deprivation of their rights under both the Fourth and the Fourteenth Amendments.

Plaintiffs, though, do not set forth what alleged arrests and/or prosecutions they are referring to or why they were wrongful. Plaintiffs set forth only conclusory accusations, which the Seventh Circuit has found to be "too vague to be cognizable by law." *Daniels v. Southfort*, 6 F.3d 482, 484 (7th Cir. 1993). "'[S]ome particularized facts demonstrating a constitutional deprivation are needed to sustain a cause of action." *Id.* at 484-85 (citing *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978)). To plead malicious prosecution, a plaintiff must "do more than state conclusively that the defendants maliciously prosecuted him" and must "allege some action that supports the conclusion that a malicious prosecution occurred." *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998).

Even if Plaintiffs could ultimately show Jason and Jimmy were not convicted of the alleged crimes, that fact, standing alone, is insufficient to support even an inference of harassment. *Daniels*,

6F.3d at 485. Additionally, even if Plaintiffs could show a vast number of arrests and/or prosecutions, those facts, standing alone, are also not enough to support an inference of harassment. *Collins v. County of Kendall, Illinois*, 807 F.2d 95, 99 (7th Cir. 1986) (citations omitted). Plaintiffs have failed to sufficiently plead the police engaged in some unlawful activity that violated their constitutional rights. *Daniels*, 6 F.3d at 485; *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). As noted above, Plaintiffs do not even list what arrests and/or prosecutions they are referring to or how City Defendants acted maliciously. Further, Plaintiffs do not contend these arrests and/or prosecutions were based on false warrants, a lack of probable cause, planted evidence or false testimony, but rather they were undertaken solely to harass them. *Sneed*, 146 F.3d at 481 (finding a plaintiff must allege he was arrested without probable cause in order to adequately plead a false arrest claim); *Snodderly v. R.U.F.F. Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001) (finding a plaintiff pleading a claim for malicious prosecution must "allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence"); *Reed*, 77 F.3d at 1054 (a failure

to allege specific wrongdoing by the police, i.e., covering up exculpatory evidence or falsely testifying, is "fatal" to a plaintiff's complaint).

Therefore, the Court is unable to find any cognizable claims that Plaintiffs were deprived of a constitutional right. *Snodderly,* 239 F.3d at 901; *Sneed*, 146 F.3d at 481. As Plaintiffs have failed to satisfy the first prong of a Section 1983 claim, the Court finds it unnecessary to proceed in the analysis and determine whether Plaintiffs' claim of an official policy is viable. Therefore, the Court finds Plaintiffs' claim of unlawful harassment against City Defendants is dismissed.

Plaintiffs also put forth a claim of unlawful harassment against School Defendants and Defendant Theodore under § 1983.[ii] [iii]

Again, the Court must first analyze whether Plaintiffs were deprived of a constitutionally protected right. Here, Plaintiffs correctly state a student has a defensible property interest in his right to a public education. *Goss v. Lopez,* 419 U.S. 565, 574 (1975); *Smith on behalf of Smith v. Severn*, 129 F.3d 419, 428 (7th Cir. 1997). Plaintiffs argue a deprivation of this right resulted from School

---

[ii] For purposes of the Court's ruling and for the sake of clarity, Defendant Theodore, who is one of City Defendants but allegedly involved in WCCHS matters, will be included in the designation School Defendants.
[iii] Plaintiffs, in their response, seek to amend their complaint so as to include only Jason and Jimmy as having claims against School Defendants. For purposes of this ruling, the Court will assume this to be so.

Defendants failure to afford, as is guaranteed by the Fourteenth Amendment, procedural due process and equal protection under the law.

To state an equal protection claim, Plaintiffs must show they: (1) are members of a protected class; (2) were similarly situated to members of an unprotected class; and (3) were deliberately treated differently from those similarly situated. *Billings v. Madison Metropolitan Sch. Dist.*, 259 F.3d 807, 812 (7th Cir. 2001). Plaintiffs have failed to set forth any facts or allegations to suggest they are members of a protected class. From the facts before the Court, the Court cannot infer protected class membership, even given the most liberal interpretation. Since Plaintiffs do not set forth any facts or allegations to support any of the elements of an equal protection claim, they are unable to satisfy the first prong of their Section 1983 claim.

Alternatively, Plaintiffs argue School Defendants deprived them of their constitutional right to procedural due process. To establish a procedural due process claim, Plaintiffs must show: (1) they were deprived of a constitutionally protected interest; and (2) the procedures afforded by School Defendants were constitutionally inadequate. *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990); *Vukadinovich v. Bd. of Sch. Trustees of Michigan City Area Schs.*, 978 F.2d 403, 410 (7th Cir. 1992). As set forth above, the right to a

public education is a constitutionally protected property interest. *Goss*, 419 U.S. at 574. But, Plaintiffs have not sufficiently pleaded School Defendants deprived them of such an interest. Plaintiffs' allegations are vague at best, and, even construed in the light most favorable to them, are still not satisfactory.

Plaintiffs allege "Jason has been deprived of the opportunity to complete his high school education at WCCHS" and "Jimmy has had his educational experience seriously compromised." (Pls.' Compl. ¶ 19). Among the more specific allegations that Plaintiffs set forth in their response, which the Court will consider for purposes of this ruling, Plaintiffs argue "Jason has been deprived of his right to complete his public education *on an equal footing* with all other students similarly situated" and that Jimmy's right "to complete his education remains seriously in doubt." (Pls.' Resp. p. 4) (emphasis added). Plaintiffs have not alleged Jason and Jimmy were expelled, suspended, transferred, held back or subjected to another disciplinary action. Plaintiffs put forth a myriad of case law supporting the proposition that disciplinary actions, such as those listed in the preceding sentence, cannot be taken without affording procedural due process. They also allege Plaintiffs were not provided with any of those procedures. But Plaintiffs fail to identify any disciplinary actions taken by School Defendants against Jason and Jimmy. Even viewing

Plaintiffs' statements in the light most favorable to them, it is still impossible for the Court to find they have adequately pleaded a procedural due process claim.

However, even if Plaintiffs were able to adequately allege a constitutional violation under either equal protection or procedural due process, their Section 1983 claim of unlawful harassment still fails as a matter of law. Plaintiffs have failed to sufficiently plead the alleged harassment was done pursuant to School Defendants' policy, as required by the second prong of a Section 1983 claim. Plaintiffs omit from both their complaint and their response any indication of how they purport to satisfy this required element. However, the Court will proceed with a determination of whether Plaintiffs' allegations could satisfy any of the three methods to establish policy.

First, there is no evidence or allegations of an express policy or established practice by WCCHS of harassing students that end relationships with the children of city employees. Therefore, the Court turns to whether or not the harassment was done in response to an order from a final policymaker. The Court looks to Illinois law to determine what persons in a public school have authority to manage and otherwise oversee the administration of the school. Under Illinois law, final policymaking authority in regards to the management and

rules enforced by a public school district is vested in the Board of Education. 105 ILCS 5/10-20.5.

Here, the only WCCHS employee that Plaintiffs mention is Defendant Highland.[iv] Highland was, at all relevant times, the Assistant Principal of WCCHS. An Assistant Principal is clearly not a final policymaker for the school and Plaintiffs fail to point to anyone else with the proper authority that was involved in the alleged harassment. A public entity is not liable for the actions of an employee based only on the employee-employer relationship. *Monell*, 436 U.S. at 691. Without some allegation by Plaintiffs that individuals, who under Illinois law have final policymaking authority, prompted the harassment, or that Defendant Highland has been granted final policymaking authority, Plaintiffs are unable to satisfy this second element of a Section 1983 claim. *See Duda v. Bd. of Educ. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (bare allegations are not enough to show a superintendent, principal, business manager or director of building and grounds had final policymaking authority); *Cornfield by Lewis v. Consolidated High Sch. Dist. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993) (the plaintiffs failed to show how a disciplinary dean had, or was granted, final policymaking authority for a high school). For this reason, and

---

[iv] Defendant Theodore is a police officer employed by City. His only connection to WCCHS is by virtue of his involvement with WCCHS as a school resource officer.

because Plaintiffs are unable to show they were deprived of a constitutionally protected right, their claim of unlawful harassment against School Defendants must fail as a matter of law.

## Count II - Invasion of Privacy

Plaintiffs' second count alleges an invasion of privacy. Plaintiffs do not set forth what documents or pieces of information were disclosed, but mention in their response that School Defendants and Defendant Theodore (one of City Defendants) disclosed Jason's grade and disciplinary reports to at least one other student and her parents. Even taking this new allegation into consideration, Count II still fails as a matter of law.

Plaintiffs claim some of these alleged disclosures violate FERPA. But, as FERPA has created no private right to enforcement, Plaintiffs bring their FERPA claim under Section 1983. In analyzing whether Plaintiffs can do so, the Court turns to the recent United States Supreme Court ruling in *Gonzaga v. Doe*, 122 S. Ct. 2268 (2002). The Court in *Gonzaga* found "[t]here is no question that FERPA's confidentiality provisions create no rights enforceable under § 1983." *Id.* Enforcement, the Court found, is left only to the Department of Education and FERPA has conferred no private enforceable right under Section 1983. *Id.* at 2273. For this reason, Plaintiffs are unable to proceed with an invasion of privacy claim under FERPA.

To otherwise bring an invasion of privacy claim under Section 1983, Plaintiffs must show a violation of a constitutionally protected right and that such violation was done pursuant to a municipal or school policy. *Monell*, 436 U.S. at 694-95.

There is no generally recognized right to privacy; rather, it attaches only under limited circumstances. *Roach v. City of Evansville*, 111 F.3d 544, 550 (7th Cir. 1997). Additionally, there is a difference between demonstrating an interest in confidentiality that is supported by statutory or common law and showing the disclosure of the allegedly confidential information is a constitutional violation. *Pesce v. J. Sterling Morton High Sch. Dist. 201*, 830 F.2d 789, 796-97 (7th Cir. 1987). Plaintiffs certainly had an interest in keeping Jason's grade and disciplinary reports confidential, but the Seventh Circuit has recognized a constitutionally actionable violation only in the case of personal medical and financial information. *Denuis v. Dunlap*, 209 F.3d 944, 955-56 (7th Cir. 2000); *see also Pesce*, 830 F.2d at 795-97 (a school psychologist did not have a constitutional right to privacy to the contents of a therapy session with a student); *Duda*, 133 F.3d at 1062, n.16 (a school employee did not have a constitutional right to privacy to the contents of his personal diary).

Here, the Court finds grade and disciplinary reports do not meet the threshold established by the Seventh Circuit. Although a disclosure of a student's grade and disciplinary reports to another student and her parents would be wholly unprofessional, such a revelation would not rise to the level of a constitutional violation. As the invasion of privacy claim fails under the first prong of a Section 1983 analysis, it is unnecessary for the Court to determine whether there was a custom, policy or an action taken by a final policymaker. Further, as discussed above regarding Count I, the Court finds Plaintiffs have not sufficiently pleaded the existence of such a policy regarding School Defendants.

For the above reasons, Count II is dismissed.

### Count III - Libel and Slander

Count III alleges WCCHS, through Defendants Highland and Theodore, among others, published slanderous statements regarding Jason.

As both City and School Defendants point out, and as Plaintiffs acknowledge in their response, Plaintiffs complaint fails to state the content of the alleged slanderous statements and includes only conclusions that slanderous statements were made. "Generally, a defamation plaintiff fails to satisfy the requirements of notice pleading unless he specifically states the words alleged to be

- 20 -

actionable." *Seaphus v. Lilly*, 691 F. Supp. 127, 134 (N.D. Ill. 1988); *see also Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1284 (N.D. Ill. 1996). "The reason a plaintiff must, under notice pleading requirements, plead the specific words alleged to be actionable is that knowledge of the exact language used is necessary to form responsive pleadings." *Woodard v. Am. Family Mutual Insurance Co.*, 950 F. Supp. 1382, 1388 (N.D. Ill. 1997). Here, Plaintiffs fail to allege the content of the slanderous statements, who made them, and when and where they were made. As a result of these deficiencies, Plaintiffs have requested an opportunity to amend their complaint. The Court finds this to be unnecessary, as Plaintiffs could still not establish a claim upon which relief could be granted due to the immunity conferred upon Defendants.

The Illinois Tort Immunity Act (the "ITIA") provides "a local public entity is not liable for any action of its employees that is libelous or slanderous." 747 ILCS 10/2-107. Plaintiffs argue immunity is precluded when employees act in a "willful or wanton manner." *Younker v. Schoenenberger*, 22 F.3d 163, 168 (7th Cir. 1994). The Court in *Younker* relied on the ruling in *Barth by Barth v. Board of Educ. of City of Chicago*, 490 N.E.2d 77, 82 (Ill. App. Ct. 1986) to support such a proposition.

However, the statute clearly imposes no threshold determination of "willful or wanton." The Illinois Supreme Court, in *In Re Chicago Flood Litigation*, 680 N.E.2d 265, 273 (Ill. 1997), expressly overruled *Barth* and found that the legislature must clearly state an exception for "wanton or willful" misconduct in the language of the statute. *Id.* Here, the legislature provides for no such exception. Therefore, any reliance on the Court's decision in *Younker* is misguided. Even if Plaintiffs were given the opportunity to replead their claim for libel and slander, they still cannot overcome the immunity conferred upon City and School Defendants by the ITIA.

Finally, Plaintiffs state in their complaint that some of allegedly libelous and slanderous statements violated FERPA. As discussed under Count II, FERPA creates no private enforceable action under § 1983 or otherwise. Therefore, a FERPA claim for libel and slander is precluded.

For the reasons set forth above, Count III of Plaintiffs' Complaint is dismissed.

## MOTIONS TO STRIKE

"Motions to strike are disfavored and will be granted only where the pleading at issue is patently defective and could not succeed under any circumstances." *Mobley v. Kelly Kean Nissan, Inc.*, 864 F. Supp. 726, 732 (N.D. Ill. 1993).

Plaintiffs seek punitive damages from City and School Defendants for all three counts. In regards to the state-based claims, the ITIA provides that local public entities cannot be held liable for punitive damages. 745 ILCS 10/2-102. In regards to the Section 1983 claims, the United States Supreme Court found municipalities cannot be held liable for punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Planned Parenthood Association / Chicago Area v. Chicago Transit Authority*, 767 F.2d 1225, 1233-34 (7th Cir. 1985) (local public entities are generally immune from punitive damage awards for Section 1983 claims).

Plaintiffs rely on *Holda v. County of Kane*, 410 N.E.2d 552, 557 (Ill. App. Ct. 1980) to argue immunity is precluded if Defendants have liability insurance. Accordingly, Plaintiffs argue Defendants must show proof they have no insurance before the Court could make a ruling on the Motions to Strike. The court in *Holda*, though, based its ruling on an old version of 745 ILCS 10/9-103(c) that provided purchasing liability insurance waives a public entity's right to proffer a defense of immunity under the ITIA. Under the new version of Section 9-103(c), passed after the ruling in *Holda*, public entities can proffer any defense available to them under the ITIA. 745 ILCS 10/9-103(c); *see Zimmerman by Zimmerman v. Village of Skokie*, 697 N.E.2d 699, 710-12 (1998). The new language omits any indication that

a waiver of immunity would result from the purchasing of liability insurance. Therefore, Plaintiffs' reliance on *Holda* is misguided and it is entirely proper for Defendants to rely on the absolute immunity conferred by Section 2-102. The Court therefore grants Defendants' Motions to Strike Plaintiffs' prayers for punitive damages.

### CONCLUSION

For the foregoing reasons, City and School Defendants' Motions to Dismiss and Strike all three of Plaintiffs' counts, as well as Plaintiffs' prayer for punitive damages, are **GRANTED**.

**IT IS SO ORDERED.**
**DATE:** August 30, 2002

_____
Hon. William J. Hibbler
U.S. District Court Judge